**UNITED STATES DISFTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TEENA F. BUEHNER,<br><br>        Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>        Defendant. | 3:14-cv-00093-LRH-VPC<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal or remand (#15) and defendant's opposition and cross-motion to affirm (#20/21). For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On August 16, 2010, Teena Buehner ("plaintiff") filed a claim for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act. (Administrative Record ("AR") 35.) Plaintiff alleged her disability commenced on March 1, 2010. (*Id*.) The Social Security Administration denied plaintiff's application in the first instance on January 20, 2011, and also upon reconsideration, on May 12, 2011. (*Id*.) On July 16, 2012, plaintiff and her attorney appeared at a hearing, via video conference, before Administrative Law Judge ("ALJ") John Heyer. (*Id*. at 35-44.) The ALJ issued a written decision on August 13, 2012, finding that plaintiff had "not been disabled" at any time between March 1, 2010 and the decision date. (*Id*. at 35.) Plaintiff

appealed, and the Appeals Council denied review on November 18, 2013. (*Id*. at 12-15.) Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

On February 14, 2014, plaintiff filed through counsel a complaint for judicial review (#3). In her motion for remand or reversal, plaintiff argues that the ALJ made a harmful error at step five. Specifically, the ALJ failed to articulate a sufficient reason for rejecting the opinion of consulting physician Dr. Julius Villaflour ("Villaflour"), who opined that plaintiff was limited to only occasional reaching. Had such opinion been credited, plaintiff argues that the ALJ would have been unable to conclude that she could adjust to any of the positions that the ALJ identified at step five, because each involves reaching. (#15 at 5-9.) Defendant's opposition and cross-motion disputes this contention of error on the basis that the ALJ was not required to explicitly address Villaflour's findings and, in any event, that the ALJ accurately accounted for the *overhead* reaching limitation by propounding a hypothetical that accounted for the possible restriction during his oral examination of the Vocational Expert ("VE"). (#20 at 5-11.)

## II.   STANDARD OF REVIEW

The burden of proving disability in a claim for SSDI payments rests upon the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423 (d)(1)(A).

This court has jurisdiction to review an ALJ's decision denying a claim for SSDI payments after the plaintiff has exhausted administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Hill v.*

*Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citations omitted); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

The substantial evidence standard is not onerous: it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (citation and quotation omitted).  Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation omitted). The ALJ's discussion must adequately explain the decision in light of such evidence: "the ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence,]" *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically discussing rejection of lay testimony) and the district court is "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

In reviewing for substantial evidence, the court examines the entire record, considering both evidence that supports and undermines the ALJ's decision.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted) ("a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citation omitted).  The ALJ alone is responsible for determining credibility and resolving ambiguities.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

### III.  DISCUSSION

**A.  SSDI claims are evaluated under a five-step sequential process.**

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI.  20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled and the Commissioner denies the claim.  *Id*. § 404.1520(b).  The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe."  *Id*. § 404.1520(a)(4)(ii)  "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities.  *Id*. § 404.1520(c).  The Commissioner denies the claim where the claimant lacks a severe impairment, or a severe combination thereof.  *Id*.  In step three, the claimant's impairment is compared to the Agency's impairment list.  *Id*. § 404.1520(a)(4)(iii); *see also id*. § 404, Subpt. P, App. 1 ("Listed Impairments").  Where the claimant's impairment is on the list, or is equivalent to any impairment therein, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled.  *Id*. § 404.1520(d).

If the Commissioner does not find disability at step three, review of the claim proceeds to the fourth step: whether the claimant can perform past relevant work.  *Id*. § 404.1520(a)(4)(iv).  The claimant is not disabled where he or she can engage in such work.  *Id*. § 404.1520(e).  The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

In making the step four determination, the ALJ considers the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. 20 C.F.R. § 404.1520(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining the claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. § 404.1545(a).

When evaluating a claimant's RFC, the ALJ is not required to believe every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). The ALJ must follow a two-part inquiry where the plaintiff alleges that the disability results from excessive limitations or pain. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *see also* Social Security Ruling 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that reasonably can be expected to produce the alleged symptoms. *Lingenfelter*, 504 F.3d at 1036. Second, where no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014), and it requires that the ALJ "specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591-92 & n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (explaining that the ALJ must "point to specific facts in the record" to support a credibility finding). The focus, however, is ultimately upon the reviewing court: the credibility determination must be "sufficiently

specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, and lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."). Medical opinions are also probative evidence when determining credibility of subjective complaints. 20 C.F.R. §§ 404.1529(c); *Rollins*, 261 F.3d at 857.

If the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. *Id*. § 404.1560(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. At step five, the ALJ typically references "the grids," under which a finding of disability may be directed, and also considers the testimony of a vocational expert. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other occupations available in significant numbers in either the region or several regions of the United States that the claimant can perform. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). If the ALJ establishes that the claimant's RFC and transferable skills allow his or her performance of

other occupations, he or she is not disabled. 20 C.F.R. § 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is entitled to benefits. *Id*. § 404.1520(g).

**B.      The ALJ followed the five-step process and concluded plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above. (AR 36-37.) The ALJ determined that plaintiff has not engaged in substantial gainful activity since March 1, 2010, the alleged onset date, and has "disc disease and spurs of the back with on-going pain," a severe impairment under the applicable regulations. (*Id*. at 37.) In contrast, the ALJ concluded that, in light of the medical evidence and opinions in the record, plaintiff's depression does not significantly limit her ability to perform basic work activities and, therefore, is not a severe impairment. (*Id*. at 37-38.) With respect to the degenerative disc disease, the ALJ concluded that this impairment did not meet or medically equal the severity of a listed impairment in the relevant subpart of the regulations; therefore, a finding of disability was not directed at step three. (*Id*. at 39.)

The ALJ proceeded to step four and made several findings. First, the ALJ concluded that plaintiff's RFC permits sedentary work with the following additional restrictions: she may lift only ten pounds; must have a sit/stand option in thirty-minute increments; may perform only simple, repetitive tasks; and cannot perform any side-to-side movements that twist her spine. (*Id*.) Second, the ALJ held that plaintiff's statements regarding the intensity and limiting nature of her impairments were consistent with a reduced capacity for work, but were not credible to the extent she alleged. (*Id*. at 39-40.) In so concluding, the ALJ reviewed and discussed the medical evidence and several medical opinions, and accorded varying primacy to the opinions. (*See id*. at 40-41.) In particular, the ALJ summarized Villaflour's opinion, recognized his suggestion of an overhead reaching limitation, and assigned to the opinion "significant weight." (*Id*. at 41-42.) However, the

RFC did not incorporate this reaching limitation. (*See id*. at 39.) Finally, in light of the RFC, the ALJ concluded that plaintiff was incapable of returning to any of her past relevant positions. (*Id*. at 42.)

Accordingly, the ALJ proceeded to step five. He determined that the grids did not demand a finding of disability or non-disability, as plaintiff's additional limitations precluded her from working the full-range of work at the sedentary level. (*Id*. at 43) Therefore, the ALJ relied upon the hearing testimony of the VE, who stated that three jobs existed in a significant number in the national economy that plaintiff could perform: order clerk, of which there are 2,000 jobs in Nevada and 500,000 nationally; office clerk, of which there are 3,000 jobs in Nevada and 400,000 nationally; and assembler, of which there are 2,000 jobs in Nevada and 250,000 nationally. (*Id*. at 43-44) Because plaintiff could perform these jobs with her RFC and aditional limitations, the ALJ found that plaintiff was not disabled and denied her SSDI claim. (*Id* at 44.)

**C.    The ALJ did not err in his evaluation of Villaflour's opinion regarding plaintiff's overhead-reaching limitation.**

The ALJ's decision demonstrates that he did, in fact, recognize that Villaflour found an overhead reaching limitation. (AR 41.) As plaintiff correctly observes, the RFC determination did not include as an additional limitation Villaflour's suggested restriction. (*See id*. at 39.) Plaintiff seeks remand on the basis that the ALJ failed to provide a legally sufficient reason for rejecting Villaflour's finding of an overhead-reaching limitation. (#15 at 7-8). Specifically, she contends that the ALJ did not provide any reason. (*Id*.) Defendant, in contrast, argues that the ALJ did not err, for he was under no obligation to articulate a reason for declining to incorporate each aspect of any opinion into the RFC determination. (#20 at 7-8). The court agrees with defendant.

An ALJ may encounter three types of medical opinions in the administrative record: treating, examining, and nonexamining. Each type receives different weight in the ALJ's review. *Garrison*,

759 F.3d at 1012. Generally, opinions from examining providers receive greater weight than those from nonexamining providers, and among examining providers, the ALJ is to accord greatest weight to the treating physician. *Id*. Opinions of treating physicians are particularly persuasive because the continuity of care enhances their abilities to fully and accurately assess the claimant's medical problems. *Embrey v. Bowen*, 949 F.2d 418, 421-22 (9th Cir. 1988). Nevertheless, the ALJ is rarely bound by the conclusions of any particular medical provider. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Moreover, the ALJ does not err by failing to discuss each and every limitation a medical opinion suggests; only those opinions, or aspects thereof, that are "significant" and "probative" require the ALJ's attention in the disability determination. *See Hiler*, 687 F.3d at 1212.

When an opinion requires the ALJ's attention, several legal standards might apply to the sufficiency of the ALJ's assessments and explanations. The ALJ must articulate "clear and convincing" reasons for disregarding a treating physician's uncontradicted opinion, *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008), but she may reject a treating or examining physician's contradicted opinion as long as she states specific and legitimate reasons that have support of substantial evidence, *Garrison*, 759 F.3d at 1012; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). An ALJ provides specific and legitimate reasons by articulating a detailed and thorough summary of facts and conflicting medical evidence, stating his or her interpretation thereof, and making findings. *Garrison*, 759 F.3d at 1012. Only when the ALJ fails to sufficiently explain why his or her conclusions are correct will the contradicted opinion of the claimant's doctor control. *See, e.g.*, *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). In supporting a decision to accept certain medical opinions over others, the

ALJ may cite contradiction, inconsistency with the evidence, and consistency of the accepted opinions with the administrative record as a whole. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).

In this case, the ALJ did not err in his treatment of Villaflour's opinion. That the ALJ assigned to the opinion significant weight did not also require that he incorporate into the RFC each and every finding therein. The applicable regulations establish that RFC is a legal determination that the ALJ makes "based on all the relevant medical and other evidence" before him. 20 C.F.R. § 404.1545(a). When determining RFC and additional limitations, the ALJ "may not ignore" the opinions of agency consultants such as Villaflour. *See* Social Security Ruling ("SSR") 96-6p. Yet the ALJ must accord appropriate primacy to such an opinion based on the considerations expressed above, *see id*.; except in those rare instances of uncontroverted evidence, no individual finding binds the ALJ.

Hence, as Villaflour's entire opinion did not control the RFC determination, the question is whether his finding required the ALJ's attention and discussion. It did not. First, Villaflour's finding was brief and conclusory. It lacked reference to independent clinical findings or discussion of specific medical records. (*See* AR 310, 314.) Hence, no requirement arose to discuss it. *Thomas*, 278 F.3d at 957. Second, and in context of the record, the reaching limitation was insignificant. *See Hiler*, 687 F.3d at 1212. In his finding, Villaflour was alone among the various medical providers—many of whom personally examined or treated plaintiff. (*See, e.g.*, *id*. at 251-54, 259, 261-78, 287-88, 290-92, 315-20, 328-35, 350-51, 356-61.) Unmistakably, the focus of medical records and the ALJ's decision was the extent to which plaintiff was limited in certain postural movements and by her back pain as a result disc disease. In light of that focus, Villaflour's isolated statement about reaching—a largely unrelated matter—was insignificant. At bottom, the ALJ did not err by omitting

the limitation in the RFC determination or by failing to state a specific and legitimate reason for doing so. *Garrison*, 759 F.3d at 1012.

**D.     Even had the ALJ erred, the error is harmless because the VE's testimony makes clear that the jobs he identified in step five can be performed without overhead reaching.**

Assuming for argument that the ALJ had erred, plaintiff avers that the error was harmful because the Dictionary of Occupational Titles ("DOT") indicates that each of the positions that the ALJ identified at step five require "frequent-constant reaching." (#15 at 8.) Plaintiff's position lacks merit, and rests on disingenuous rhetorical liberty. The record readily evidences that the jobs identified at step five can be performed by an individual with an *overhead* reaching limitation, which is the precise limitation Villaflour suggested. (*See* AR 310.) Accordingly, any error was harmless.

Courts in the Ninth Circuit "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. Consistent with the court's duty to review the ALJ's decision for substantial evidence rather than affirm upon its own independent findings, the court must exercise caution when relying on the harmless error doctrine. *See Stout*, 454 F.3d at 1054. Where a reviewing court can "confidently conclude" that no reasonable ALJ would have reached a different determination, the ALJ's error is harmless. *Robbins*, 466 F.3d at 885.

At the July 16, 2012 hearing, the ALJ took testimony of a VE, Jeff Beeman. (AR 89.) The ALJ propounded the following hypothetical:

> Now I want to ask you a hypothetical question. I'd like you to consider, . . . a 10 pound lifting limit. I'd like you to consider an individual that can complete an eight hour day, if given the option to alternate between sitting and standing as needed, in 30 minute increments. Who's unable to do side to side movements, *but can work with her arms in front of her*. And also who's limited to simple repetitive tasks, due to some diminished cognition maybe from her medications or from her cognition.

(*Id*. at 115-16 (emphasis added).)  Thereafter, following the VE's indication that such a person would be unable to perform any of plaintiff's past relevant work, the ALJ inquired whether such a person, limited to working only with her arms before her, could perform any work available in the national economy.  (*Id*. at 116-17.)  The VE stated: "Yes."  (*Id*. at 117.)  Following clarification about the side-to-side restrictions, the VE stated that the ALJ's hypothetical limitations "would [not] be problematic" for several jobs at the sedentary level, including the order clerk, office clerk, and assembler positions.  (*Id*. at 117-18).  The ALJ cited these same positions at step five.  (*Id.* at 43.)  Accordingly, to the extent that he erred in the text of his opinion, the hearing testimony provides substantial evidence that the ultimate finding of nondisability considered any possible reaching limitation that may limit plaintiff's workplace capabilities.

Relatedly, the ALJ did not err by failing to elicit testimony from the VE regarding any arguable inconsistency between the DOT and the VE's testimony.  "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE . . . evidence and the DOT, *the adjudicator must elicit a reasonable explanation for the conflict* before relying on the VE . . . ."  SSR 00-4p (emphasis added); *see Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).  Some courts take the view that a conflict does not arise from the DOT's mere silence on a matter—at least on modifiable aspects of a position such as a sit/stand option.  *See, e.g.*, *Cortez v. Colvin*, No. 2:13-cv-01496-APG-VCF, 2014 WL 3734308, at *2 (D. Nev. July 28, 2014).[1]  This view coheres

---

[1] This court would not apply the principle so broadly.  Indeed, the silence of the DOT creates meaningful conflicts in some instances.  By necessity, the DOT provides "information about the requirements of work in the national economy" and is not exhaustive.  *Massachi*, 486 F.3d at 1153 (quoting SSR 00-4p).  The VE may provide more accurate information about how a position is performed in the local market.  Generally, such testimony—about postural considerations, break allowances, and other considerations about which the DOT is silent *en masse*—are simply clarifications or "additional" information about the job.  This testimony rarely creates a true conflict with the DOT, since the DOT omits discussion of such matters.
    Yet consider the case where the ALJ has concluded that a claimant's transferable skills allow her to perform a

with the VE's step-five role, which often is to introduce greater specificity into the occupational assessment. *See* SSR 00-4p (The Vocational Expert "may be able to provide more specific information about jobs or occupations than the DOT."); *Cortez*, 2014 WL 3734308, at *3. Under this approach, there was no conflict; the DOT descriptions for the three positions do not facially indicate "frequent-constant reaching" of any kind. *See Dictionary of Occupational Titles* §§ 209.587-014, 249.587-014, 734.687-018[2] (4th ed. 1991). Further, even if the descriptions are read to demand "general" reaching abilities, the ALJ's precise hypothetical accounted for the *specific* limitation faced by plaintiff, and the VE affirmed that the she can perform the jobs with the reaching capacity she retains. Hence, rather than a conflict, the VE's testimony is properly interpreted as clarifying the nature of the three positions as locally performed. *See Massachi*, 486 F.3d at 1153; SSR 004-p. In sum, even if the ALJ had erred by failing to incorporate the reaching limitation into the RFC finding or by omitting an express reason for rejecting the limitation, substantial evidence—the hearing testimony—demonstrates that plaintiff suffered no harm from the error. Her RFC allows her to perform the positions identified at step five.

## IV.   CONCLUSION

The court concludes that substantial evidence in the record supports the ALJ's determination of nondisability. The ALJ did not err in his treatment of Villaflour's opinion, for it was not entitled to controlling weight, and the reaching limitation was not significant evidence that required

---

position identified at step five, yet the DOT description is facially unrelated to those skills. A conflict arises. The DOT is not silent about the underlying nature of the position it lists; if a job was said to entail only receptionist duties, one reasonably assumes that the job does not require wood chopping. However exaggerated the latter example may be, it illuminates the following point: describing a job with qualities A, B, and C conversely implies neither D, E, nor F. Hearing testimony that a job has fundamentally different responsibilities—testimony that would alter the nature of the position as outlined by the DOT—thus creates a conflict with the negative implications of the DOT's text. For this reason, "conflict," for the purpose of rule that requires the ALJ to elicit an explanation, cannot be logically limited to those few situations where the VE directly refutes the DOT. The conclusion is bolstered by the ease with which an ALJ may inquire of the VE's basis for offering contrary information: merely asking a question at the hearing.

[2] The code provided in the opinion differs from the number spoken by the VE (*compare* AR 43 *with* AR 118). The court assumes that the ALJ intended to refer to the VE's identified number. In in any case, the error does not alter the court's analysis.

discussion. Moreover, even had the ALJ erred, the error was harmless. Consequently, the court recommends that plaintiff's motion for remand (#15) be denied and that defendant's cross-motion to affirm (#20) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (#15) be **DENIED** and defendant's cross-motion to affirm (#13) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED:** March 2, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**